# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1291V

| | |
|---|---|
| MATTHEW MILLER, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: August 18, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Ronald Craig Homer,*[1] *Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Rachelle Bishop,*[2] *U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[3]

On September 30, 2020, Matthew Miller filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[4] (the "Vaccine Act"). Petitioner alleged that after receipt of an influenza ("flu") vaccine on October 10, 2018, he suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table. Petition at 1. The case was assigned

---

[1] Although Ronald Homer is attorney of record, Nathaniel Enos appeared on behalf of Petitioner at the expedited hearing.

[2] Although Rachelle Bishop is attorney of record, Bridget Corridon appeared on behalf of Respondent at the expedited hearing.

[3] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[4] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

to the Special Processing Unit of the Office of Special Masters (the "SPU"). The parties disputed both entitlement and an appropriate award of damages, so the matter was submitted for an SPU Motions Day hearing.

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, **I find that Petitioner is entitled to compensation, and I award damages in the total amount of $55,944.24 (representing $55,000.00 for actual pain and suffering, plus $944.24 for actual unreimbursable expenses).**

**I.    Relevant Procedural History**

The Petition was accompanied by the medical records and the signed declaration required under the Vaccine Act as Exhibits ("Exs.") 1-6. On October 8, 2020, the case file was deemed to be sufficiently complete, and it was assigned to SPU. ECF No. 11. While awaiting Respondent's medical review, Petitioner conveyed a demand on September 7, 2021. ECF No. 26. Nearly thirteen (13) months after the case was assigned to SPU – on November 1, 2021 - Respondent filed a status report indicating he was willing to engage in settlement discussions. ECF No. 28.  However, the parties reached an impasse on May 5, 2022. ECF No. 34.

On June 8, 2022, Respondent filed his Rule 4(c) Report, ECF No. 35, in which he argued that preponderant evidence did not support a Table SIRVA. I directed the parties to file sequential briefing on the disputed entitlement issues and (in the event that Petitioner prevailed) damages. Scheduling Order filed July 20, 2022, ECF No. 36; Petitioner's Motion filed Sept. 6, 2022, ECF No. 39; Respondent's Response, filed Oct. 13, 2022, ECF No. 40; Petitioner's Reply, filed Nov. 4, 2022, ECF No. 42.

On June 7, 2023, I proposed the case for an expedited hearing to take place on July 14, 2023, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 45. The parties agreed, and the "Motions Day" hearing took place as scheduled. ECF No. 46; Minute Entry dated July 17, 2023.[5] During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

---

[5] As of the date of this Decision, the transcript of the July 16, 2023, Motions Day hearing has not been filed, but my oral ruling is incorporated by reference herein.

2

## II. Factual Findings and Ruling on Entitlement

### A. Authority

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[6] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

---

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Findings Regarding QAI Criteria for Table SIRVA

Respondent first contests that the onset of Petitioner's shoulder pain occurred within 48 hours after the vaccine's administration. Response at 9; *see also* 42 C.F.R. §§ 100.3(a)(XIV)(B), 100.3(c)(10)(ii) (requiring onset within this timeframe to meet the Table SIRVA listing). He emphasizes that shoulder pain was not documented in two medical records; the first documentation of shoulder pain, beginning 72 days post-vaccination, is insufficiently vague; and a treating provider's later recollection of Petitioner's shoulder pain during his wife's medical appointment is not persuasive. Response at 9-11.

The initial post-vaccination medical records not mentioning shoulder pain are not compelling: the first was an audiology evaluation, which was focused on complaints and findings not at all involving the shoulder. The second was a "refill reminder" for a medication relating to an unrelated medical condition, which appears to have been automatically generated and does not include clear means for Petitioner to report a new complaint.

Petitioner maintains that he initially hoped that the pain would resolve on its own. The 72-day delay in seeking treatment supports that Petitioner's shoulder pain was less severe, but it does not defeat a favorable onset determination. Once he presented for treatment, he reported a consistent history (e.g., "ongoing after flu shot"; "sudden, started with flu shot," "s/p [status post] flu shot") which is reasonably understood to fit within the Table timeframe, with no indication of an alternative onset or alternative causes.

Respondent's second and final entitlement objection is that Petitioner's pain was not limited to his vaccinated left shoulder. Response at 11; *see also* 42 C.F.R. §§ 100.3(c)(10)(iii) (providing that in a Table SIRVA, "pain and reduced range of motion are limited to the shoulder in which the vaccine was administered"). Rather, Petitioner reported pain in the opposing *right* shoulder. Response at 11. But the cited medical records may be in error or a misinterpretation by Respondent. For instance, the notation "right now" did not necessarily mean the right shoulder, but rather, a current complaint.

Petitioner also recalled that his pain at times radiated from the left shoulder, down through his left arm and hand. Response at 11. And as I have previously observed, such complaints do not defeat an otherwise-meritorious SIRVA claim – especially where there is ample and preponderant evidence that pain was primarily in the vaccinated shoulder.

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) and (iv). A thorough review of the record in this case does not reveal either a prior or current condition, and no other condition or abnormality which would explain Petitioner's symptoms. Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of his injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent

does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## III. Compensation to be Awarded

### A. Pain and Suffering

Under the Vaccine Act, the petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

Compensation shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[7] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress

---

[7] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by a decision of the Court of Federal Claims several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* instead emphasized the importance of assessing pain and suffering by looking to the record evidence specific to the injured individual, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

I have periodically provided (in other published decisions) statistical data on pain and suffering for SIRVA claims resolved in SPU. *See, e.g.*, *McKenna v. Sec'y of Health & Human Servs.*, No. 21-0030V, 2023 WL 5045121, at *2-3 (Fed. Cl. Spec. Mstr. July 7, 2023). As noted in *McKenna*, as of July 1, 2023, in 173 SPU SIRVA cases that required reasoned damages determinations, compensation for past pain and suffering ranged from $40,000.00 to $215,000.00. *Id.* at *3. Cases with higher pain and suffering awards involved prompt medical attention; high subjective pain ratings; moderate to severe limitations in range of motion; significant findings on MRI; surgery or significant conservative treatment; and evidence of permanent injury. *Id.* at *3.

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments that would impact his awareness of the injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed declarations,[8] filings, and all assertions made by the parties in written documents and at the expedited hearing held on September 30, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

---

[8] Rather than affidavits, the statements provided by Petitioner are declarations signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

Pursuant to my oral ruling on July 14, 2023 (which is fully adopted herein), **I find that $55,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

When making this determination, I have considered relevant facts such as the mildness of Petitioner's left shoulder pain and limited ROM – as corroborated by his initial delay in seeking treatment; lack of prescription pain medication; and low pain ratings – at times reaching 0/10 at rest. I recognize that he did develop adhesive capsulitis – but that was improved with one steroid injection five months post-vaccination. His condition improved further, to the point that Petitioner had "met all goals" by his discharge from physical therapy ("PT"), after just 9 sessions total, 10.5 months post-vaccination. Petitioner confirmed in a letter to his primary care provider that his shoulder had "finally recovered" 11.5 months post-vaccination. It was reasonable to receive some additional massage therapy (which treatment for his shoulder had been endorsed by the physical therapist) ending 13 months post-vaccination, but his condition resolved by that point.

Petitioner seeks $65,000.00 for his actual pain and suffering. In reaction, Respondent proffers $42,500.00, which would situate this case among the lowest awards resolved by reasoned opinion in the Program. Response at 19-20. But via his proffer, Respondent concedes that Petitioner should receive more than his first cited case, *Ramos*.[9] The second case Respondent references, *Mejias*, involved an even longer delay in seeking treatment, zero PT sessions, and refusal of a cortisone injection.[10] Petitioner's cited cases are instructive. Brief at 39-40. Based on the similarities to cases like *Welch*[11] and *Roth*,[12] I will award $55,000.00 for Mr. Miller's actual pain and suffering.

### B. Actual Unreimbursable Expenses

Compensation shall also include "actual unreimbursable expenses" which: "(i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation, developmental evaluation,

---

[9] *Ramos v. Sec'y of Health & Human Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for actual pain and suffering).

[10] *Mejias v. Sec'y of Health & Human Servs.*, No. 19-1944V, 2021 WL 589622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) ($45,000.00).

[11] *Welch v. Sec'y of Health & Human Servs.*, No. 18-0660V, 2021 WL 4612654 (Fed. Cl. Spec. Mstr. Sept. 2, 2021) ($55,000.00).

[12] *Roth v. Sec'y of Health & Human Servs.*, No. No. 19-0944V, 2021 WL 4469920 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) ($58,000.00 – to an individual who received no cortisone injections, but underwent a greater number of PT sessions, which recorded consistently severe pain).

special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." Section 15(a)(1)(B).

Here, Respondent opposes $715.00 in massage therapy expenses. Response at 20. But there is sufficient documentation that Petitioner incurred the expenses, *see* Ex. 9. Petitioner explains that the massage therapy was focused on his shoulder. It is not apparent that a massage therapist would keep records of treatment, and Respondent has not explained why reimbursement of the expenses should turn on proof that the therapist was certified. The massage therapy is contemporaneously noted and endorsed by the physical therapist who was treating Petitioner's shoulder. *See, e.g.*, Ex. 2 at 545 ("Massage has a lot of health benefits, and it certainly would not be harmful"). Finally, Respondent has agreed that Petitioner's prior medical history was non-contributory – further supporting a conclusion that the massage therapy was intended to treat his shoulder. Accordingly, those expenses will be awarded.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, Petitioner is entitled to compensation in this case.**

**Furthermore,** I award Petitioner a lump sum payment of **$55,944.24 (representing $55,000.00 for actual pain and suffering,[13] plus $944.24 for actual unreimbursable expenses).**[14] This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

**IT IS SO ORDERED.**                                      **s/Brian H. Corcoran**
                                                          Brian H. Corcoran
                                                          Chief Special Master

---

[13] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[14] The parties stipulated to the expenses apart from those for massage therapy (awarded herein). Brief at 37; Response at 20.

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.